UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| JEFFRY THUL, | ) | |
|---|---|---|
| | ) | Case No. 1:22-cv-96 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Christopher H. Steger |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Defendant*. | ) | |

**MEMORANDUM OPINION**

Before the Court is Defendant's motion to dismiss (Doc. 12) and Plaintiff's objection to Defendant's non-consent to proceed before a magistrate judge (Doc. 17). For the following reasons, Defendant's motion to dismiss (Doc. 12) will be **GRANTED**, and Plaintiff's objection (Doc. 17) will be **DENIED AS MOOT**.

I. BACKGROUND

Plaintiff Jeffry Thul worked as a supervisory facility operations specialist for the National Parks Service ("NPS") at Chickamauga and Chattanooga National Military Park (the "Park") for seven years until his termination in September 2019. (Doc. 1, at 3, 14.) Thul alleges that in 2015 Brad Bennett, the Park Superintendent, directed him to "discriminate against his staff" and "play favorites to new staff by over rating their performance[.]" (*Id.* at 7, 13.) Thul refused, so Bennett began giving him negative performance reviews. (*Id.*) Thul reported this conduct to Ed Buskirk, the Associate Regional Director for Administration, who did not investigate the complaint or refer the complaint to the investigation process prescribed in NPS's employee

manual.  (*Id.* at 6–7, 13.)  Thul alleges that Bennett's negative performance reviews continued through 2016.  (*Id.* at 14.)

In January 2017, Thul responded to gunshots reported in a Park restroom, which ended up being a Park visitor who committed suicide.  (*Id.* at 14.)  Thul was the first to respond.  (*Id.*)  After the incident, Thul was diagnosed with Post-Traumatic Stress Disorder and Unspecified Depressive Disorder—both of which was related to the suicide and the events of the prior two years.  (*Id.* at 15, 19.)  Thul filed an internal hostile-work-environment complaint against Bennett in June 2017, who, according to Thul, suspended him for five days immediately after in retaliation for filing the complaint.  (*Id.* at 14–15.)  In July 2017, Thul left work and sought medical treatment.  (*Id.* at 15.)  Thul claims his hostile-work-environment complaint was never investigated.  (*Id.* at 15–16.)  This allegedly led to psychological trauma, preventing Thul from working.  (*Id.* at 6–7.)  NPS terminated Thul in September 2019, according to Thul, "based solely on his disability."  (*Id.* at 1, 16.)

After his termination, Thul initiated complaints with the Department of Interior's Office of Diversity, Inclusion, and Civil Rights ("ODICR") alleging disparate treatment under Title VII of the Civil Rights Act of 1964 and disparate treatment and denial of reasonable accommodations based on a disability under the Rehabilitation Act.  (*Id.* at 51.)  ODICR found that Thul was subjected to disparate treatment and denial of reasonable accommodation based on his mental disability under the Rehabilitation Act but was not subjected to disparate treatment under Title VII.  (*Id.*)

Thul previously filed a lawsuit against the United States and various government officials on December 23, 2020, based on largely the same factual allegations as this case.  (Docs. 1, 11 in Case No. 1:20-cv-354.)  The main difference between the prior lawsuit and the current lawsuit is

Thul's claims. In the prior lawsuit, Thul brought claims under the Fifth Amendment, various employment-discrimination statutes, the Federal Tort Claims Act ("FTCA"), and the doctrine announced in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. 11-1, at 12–25; Doc. 11-2, at 1–22 in Case No. 1:20-cv-254.) The Court dismissed the prior lawsuit for failure to serve, and an appeal is pending. (Docs. 27, 30 in Case No. 1:20-cv-254.)

Thul filed the current lawsuit on April 18, 2022, bringing three claims under the FTCA: (1) negligent supervision; (2) negligent investigation; and (3) negligent infliction of emotional distress. (Doc. 1, at 22–26.) Notably, Thul did not bring any claims under an employment-discrimination statute. (*Id.* at 1.) The Government has moved to dismiss all claims (Doc. 12), and this motion is ripe for the Court's review.

## II. STANDARD OF REVIEW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id.* at 679. For purposes of this determination, the Court

3
Case 1:22-cv-00096-TRM-CHS   Document 18   Filed 12/19/22   Page 3 of 7   PageID #: 165

construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

The Government moves to dismiss all claims against it, arguing that employment-discrimination statutes are Thul's sole remedy—not the FTCA. (Doc. 13, at 3–4.)

Employment-discrimination statutes are the sole remedy for federal employees to combat illegal job discrimination. *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006) ("Federal employees must rely upon Title VII and other federal antidiscrimination statutes . . . that apply to the federal government as the exclusive remedy for combating illegal job discrimination."); *Forest v. U.S. Postal Serv.*, 97 F.3d 137, 141 (6th Cir. 1996) ("In [amending Title VII], Congress created 'an exclusive judicial remedy for claims of discrimination in federal employment . . . .'")

(quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976)); *Peltier v. United States*, 388 F.3d 984, 989 ("[T]he Rehabilitation Act . . . provides the remedy for federal employees alleging disability discrimination."). But "[t]he Sixth Circuit has not yet specifically addressed the issue of whether Title VII [and other federal employment-discrimination statutes] preempt[] claims that arise out of facts and circumstances that seek to address injuries other than workplace discrimination." *Kuklinski v. Lew*, No. 3:14-cv-843, 2017 WL 360962, at *4 (W.D. Ky. Jan. 24, 2017). Other courts are split on the issue. *Compare Brock v. United States*, 64 F.3d 1421, 1423 (9th Cir. 1995) ("Title VII is not the exclusive remedy for federal employees who suffer 'highly personal' wrongs, such as defamation, harassing phone calls, and physical abuse.") (citations omitted), *and Ethnic Emps. of the Libr. of Cong. v. Boorstin*, 751 F.2d 1405, 1415–16 (D.C. Cir. 1985) ("Nothing in [Title VII's] history even remotely suggests that Congress intended to prevent federal employees from suing their employers for constitutional violations against which Title VII provides no protection at all.") (citation omitted), *with Pfau v. Reed*, 125 F.3d 927, 933–34 n.2 (5th Cir. 1997) ("So long as the factual predicate of a claimant's non-Title VII claims is the same as the factual predicate for the claimant's Title VII claims against a federal agency, we ae bound to conclude that Title VII preempts the non-Title VII claims.") (citations omitted), *vacated*, *and Mathis v. Henderson*, 243 F.3d 446, 450–51 (8th Cir. 2001) (agreeing with *Pfau*).

The courts holding that employment-discrimination statutes do not preempt all claims based on workplace conduct do so only in circumstances where federal employees suffer a "highly personal wrong." *Brock v. United States*, 64 F.3d 1421, 1423 (9th Cir. 1995). District courts within the Sixth Circuit have applied this "highly personal wrong" standard. *See Every v. Brennan*, No. 3:16-cv-710, 2018 WL 4568600, at *4 (E.D. Tenn. Sept. 24, 2018) ("Plaintiff has alleged no personal harm or injuries that are distinct and independent from her discrimination

claims."); *Heimberger v. Pritzker*, No. 2:12-cv-01064, 2014 WL 1050341, at *9 (S.D. Ohio Mar. 17, 2014). A "highly personal wrong" "requires serious 'personal violation', such as rape, sexual assault, or stalking, defamation, and harassment with phone calls." *Heimberger*, 2014 WL 1050341 at *9 (cleaned up) (citing *Brock*, 64 F.3d at 1421; *Arnold v. United States*, 816 F.3d 1306 (9th Cir. 1986); *Otto v. Hecker*, 781 F.2d 754 (9th Cir. 1986)). "Merely 'highly offensive' conduct, such as 'intentional touching and [] sexually suggestive and vulgar remarks,' are 'typical of the offensive workplace behavior giving rise to an action to remedy a hostile work environment,' and are properly considered under Title VII, not a separate cause of action." *Id.* (quoting *Sommatino v. United States*, 255 F.3d 704, 712 (9th Cir. 2001) (alteration in original)).

Applying the more forgiving "highly personal wrong" standard, this Court concludes that Thul's claims are preempted by employment-discrimination statutes—namely the Rehabilitation Act. Thul alleges no facts constituting a wrong beyond an employment-discrimination claim. (*See generally* Doc. 1.) Thul's three claims, negligent supervision, negligent investigation, and negligent infliction of emotional distress, are all akin to the employer-liability standard in a hostile-work-environment claim and, therefore, are not distinct from an employment-discrimination claim. *See Williams v. Gen. Motors Corp*, 187 F.3d 553, 561 (6th Cir. 1999) (citations omitted) (emphasis in original) (cleaned up) ("Once an employee has established actionable discrimination involving 'no tangible employment action,' an employer can escape liability only if it took reasonable care to *prevent and correct* any [] harassing behavior.").

Thul's other allegations fit neatly into the retaliation-claim framework. (Doc. 1, at 13 ("In 2015, Mr. Bennett began directing the Plaintiff to discriminate against his staff . . . when the Plaintiff adhered to the laws, rules and regulations, Mr. Bennett began to negligently show a decrease in the Plaintiff's performance.")); *see Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th

6
Case 1:22-cv-00096-TRM-CHS   Document 18   Filed 12/19/22   Page 6 of 7   PageID #: 168

Cir. 2014) (retaliation is, in part, when an employer takes an adverse employment action against an employee for engaging in a protected activity).  Because these claims are not "distinct and independent from [] discrimination claims," Thul cannot bring these claims under the FTCA; his exclusive remedy lies in employment-discrimination statutes.  *See Every*, 2018 WL 4568600, at *4.  Therefore, Thul's FTCA claims are preempted.

## IV. CONCLUSION

For the above reasons, Defendant's motion to dismiss (Doc. 12) is **GRANTED**. Plaintiff's objection to Defendant's non-consent to proceed before a magistrate judge (Doc. 17) is **DENIED AS MOOT**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**